**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
───────────────────────────────────

**LESHONTEE SPENCER,**

                **Plaintiff,**        **09 Civ. 3773 (JGK)**

      - against -             **MEMORANDUM ORDER AND**
                                                             **OPINION**
**ERIC ELLSWORTH, BRIAN MCCAUGHEY, NEW**
**YORK CITY POLICE DEP'T, P.O. BISHOP,**
**OFFICERS JOHN DOE AND JANE DOE 1-10.**

                **Defendants.**
───────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Leshontee Spencer, brought this action against the New York City Police Department ("NYPD"), NYPD Officers Eric Ellsworth and Brian McCaughey (the "Served Defendants"), and P.O. Bishop and Officers John Doe and Jane Doe 1-10 (the "Unserved Defendants"). The plaintiff alleges claims of malicious prosecution under 42 U.S.C. § 1983. The plaintiff also alleges claims of negligence and intentional infliction of emotional distress. The defendants move for summary judgment and dismissal pursuant to Federal Rules of Civil Procedure 56 and 12(c).

I

    The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., LP, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Behringer v. Lavelle Sch. for Blind, No. 08 Civ. 4899, 2010 WL 5158644, at *1 (S.D.N.Y. Dec. 17, 2010).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

(citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Behringer, 2010 WL 5158644, at *1.

The standards to be applied to a motion pursuant to Rule 12(c) are the same as those applied to a motion pursuant to 12(b)(6).  See, e.g., Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).  In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiffs' favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Gant v. Wallingford Bd. of Educ., 69 F.3d 699, 673 (2d Cir. 1995).  The Court should not dismiss the complaint if the plaintiffs have stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Id.; see also SEC v. Rorech, 673 F. Supp. 2d 217, 221 (S.D.N.Y. 2009); First Am. Int'l Bank v. Comty.'s Bank, No. 10 Civ. 3775, 2011 WL 102716, at *4 (S.D.N.Y. Jan. 11, 2011).

In deciding the motion, the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that either are in the plaintiffs' possession or were known to the plaintiffs when they brought suit, or matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Woodhams v. Allstate Fire & Cas. Co., No. 10 Civ. 441, 2010 WL 3858440, at *2 (S.D.N.Y. Sept. 28, 2010).

                                II

The following facts are undisputed unless otherwise noted.

On May 27, 2007, the plaintiff was arrested for the robbery of Javier Delarosa ("Delarosa"). (Defs.' 56.1 Stmt. ¶¶ 1, 5; Pl.'s 56.1 Stmt. ¶¶ 1, 5.) Prior to making this arrest, the NYPD received several 911 calls, one from Delarosa himself, reporting a robbery by two or three black males near the McDonald's Restaurant near Broadway and 145th Street in Manhattan, and stating that the perpetrators had fled the crime scene. (Defs.' 56.1 Stmt. ¶¶ 1, 2; Pl.'s 56.1 Stmt. ¶¶ 1, 2.) The NYPD dispatched officers to the crime scene, where they observed the two men, later identified as the plaintiff and his friend, Damon Neal, running away from the McDonald's, entering a car, and driving away. (Defs.' 56.1 Stmt. ¶ 3; Pl.'s 56.1 Stmt. ¶ 3.) After a short pursuit, the officers pulled over the vehicle, inside of which they found the plaintiff and three companions. (Defs.' 56.1 Stmt. ¶ 4; Pl.'s 56.1 Stmt. ¶ 4.) Officer McCaughey ("McCaughey") arrived on the scene and frisked the plaintiff, patting him down twice and removing a few items from the plaintiff's pockets. (Stavridis Decl., Ex. Q "Trial Tr." at 122-25.) While frisking the plaintiff, McCaughey did not pat down the plaintiff's groin or buttocks, and did not recover a weapon. (Trial Tr. at 123-25.) The plaintiff and his companions were arrested after Delarosa arrived and allegedly identified them as the men who had robbed him. (Defs.' 56.1 Stmt. ¶ 5; Pl.'s 56.1 Stmt. ¶ 5.)

5

Shortly after, Officer Ellsworth ("Ellsworth") arrived on the scene to transport the plaintiff to the precinct. (Defs.' 56.1 Stmt. ¶ 6; Pl.'s 56.1 Stmt. ¶ 6.) The plaintiff's hands were cuffed behind his back and the plaintiff was transported to the precinct in the rear of a patrol car. (Defs.' 56.1 Stmt. ¶ 7; Pl.'s 56.1 Stmt. ¶ 7.) When Ellsworth escorted the plaintiff, who remained handcuffed, into the precinct he heard a clank and saw a gun on the floor near the plaintiff's feet. (Defs.' 56.1 Stmt. ¶¶ 8-10; Pl.'s 56.1 Stmt. ¶¶ 8-10.) One of the plaintiff's companions, who was also in the precinct, made videotaped and written statements stating that he saw the gun drop from the plaintiff's shorts, although the plaintiff argues that the statements would be hearsay if offered for the truth of the statements. (Defs.' 56.1 Stmt. ¶ 11; Pl.'s 56.1 Stmt. ¶ 11; Stavridis Decl., Ex. G.) Delarosa testified before the grand jury that the plaintiff displayed a black gun during the course of robbing him.[1] (Defs.' 56.1 Stmt. ¶ 24; Pl.'s 56.1 Stmt. ¶ 24.) The plaintiff testified before the grand jury that he did not have a gun and that he did not drop the gun that fell by his feet at the precinct. (Defs.' 56.1 Stmt. ¶ 25; Pl.'s 56.1 Stmt. ¶ 25.)

---

[1] Delarosa also alleged in the complaint he filed through the New York City Police Department Omniform Complaint System that the men who robbed him displayed a gravity knife. (Stavridis Decl., Ex. D.)

Based in part on information from Ellsworth, McCaughey, the plaintiff's arresting officer, filed a criminal complaint against the plaintiff and his companions on May 28, 2007. (Stavridis Decl., Ex. K.)  On June 15, 2007, a grand jury indicted the plaintiff on three counts of robbery and three counts of criminal possession of a weapon. (Defs.' 56.1 Stmt. ¶ 23; Pl.'s 56.1 Stmt. ¶ 23; Stavridis Decl., Ex. L.)  More specifically, the plaintiff was charged with two counts of criminal possession of a weapon in the second degree for the alleged possession of a loaded firearm, and one count of criminal possession of a weapon in the third degree for the possession of a gravity knife which Delarosa claimed was displayed in the course of the robbery. (Stavridis Decl., Ex. L at 2-3, Ex. D.)  Prior to trial, the Assistant District Attorney withdrew the robbery charges against the plaintiff.  It is undisputed that Delarosa was not available for trial. (Defs.' 56.1 Stmt. ¶ 28; Pl.'s 56.1 Stmt. ¶ 28.)  At the close of trial, the jury acquitted the plaintiff of the remaining weapons charges, namely criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. (Defs.' 56.1 Stmt. ¶ 29; Pl.'s 56.1 Stmt. ¶ 29.)

On April 14, 2009, the plaintiff initiated this action alleging, among other claims, malicious prosecution in violation of 42 U.S.C. § 1983, as well as state claims of negligence, and

intentional infliction of emotional distress. (Defs.' 56.1 Stmt. ¶ 30; Pl.'s 56.1 Stmt. ¶ 30.)  The plaintiff filed a Supplemental Complaint ("Compl.") dated September 11, 2009, in which he reasserted those claims, but failed to name P.O. Bishop as a defendant.

III

A

As a threshold matter, the defendants move to dismiss all claims against the Unserved Defendants pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  The plaintiff filed the original complaint on April 14, 2009, and has not yet served P.O. Bishop, nor has he identified and served defendants John and Jane Doe 1-10.  In response to the motion for summary judgment, the plaintiff did not attempt to show "good cause" for his failure or seek the Court's permission to serve these parties beyond the 120 day period.  Cf. Kwan v. Schlein, 441 F. Supp. 2d 491, 498 (S.D.N.Y. 2006) (granting an extension of time to serve under Rule 4(m) when the plaintiff explained her repeated unsuccessful

8

efforts to serve the defendant). Moreover, the plaintiff has failed to assert any specific allegations against the John and Jane Doe defendants in his complaint, and while he asserted a claim against P.O. Bishop in his initial complaint, he asserted no such claim in his supplemental complaint. (See "Compl." ¶ 34.) Therefore, all claims against P.O. Bishop and defendants John and Jane Doe are **dismissed**.

B

Next, the defendants argue that the malicious prosecution claim against the Served Defendants should be dismissed.[2]

To sustain a Section 1983 claim based on malicious prosecution, a plaintiff must demonstrate a seizure amounting to a Fourth Amendment violation and establish the elements of a malicious prosecution claim under state law. See Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010); see also Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997). In New York, to make out a claim for malicious prosecution, a plaintiff must show "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for

---

[2] The plaintiff made it clear at argument that his malicious prosecution claim was asserted solely under 42 U.S.C. § 1983.

9

defendant's actions." Manganiello, 612 F.3d at 161 (internal quotation marks omitted).

Probable cause is a complete defense to a claim of malicious prosecution, id. at 161-62 (quoting Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)), and a grand jury indictment creates a presumption of probable cause. See, e.g., Donnelly v. Morace, 556 N.Y.S.2d 605, 606 (App. Div. 1990) ("[A] presumption that there was probable cause for the prosecution . . . exists when the plaintiff was indicted or arrested by warrant."); Rothstein v. Carriere, 373 F.3d 275, 282-83 (2d Cir. 2004). "The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." Rothstein, 373 F.3d at 283 (quoting Colon v. City of New York, 455 N.E.2d 1248, 1250-51 (N.Y. 1983)); see also Alcantara v. City of New York, 646 F. Supp. 2d 449, 460 (S.D.N.Y. 2009). Thus, a malicious prosecution claim after an indictment will only succeed if the plaintiff can "establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Rothstein, 373 F.3d at 283 (quoting Colon, 455 N.E.2d at 1250-51). The plaintiff must "establish what occurred

10

in the grand jury and . . . that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially." Id. at 284 (internal quotation marks and citations omitted).

    Here, the plaintiff submitted grand jury minutes in an effort to show that McCaughey and Ellsworth committed perjury before the grand jury. The defendants first argue that these minutes are inadmissible because (1) the plaintiff has not obtained an unsealing order for the minutes and (2) the minutes have not been authenticated as required under Federal Rules of Evidence 901 and 902(4). (See Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.") at 7-8.) With respect to the first argument, courts in this district have considered sealed grand jury minutes in order to prevent a "miscarriage of justice." See, e.g., Brandon v. City of New York, 705 F. Supp. 2d 261, 272 n.2 (S.D.N.Y. 2010); Ramashwar v. Espinoza, No. 05 Civ. 2021, 2006 WL 23481, at *8 n. 10 (S.D.N.Y. Jan. 5, 2006), aff'd, 231 Fed. Appx. 26 (2d Cir. 2007). As for the second argument, although the minutes are unauthenticated, see Rechtschaffer v. City of New York, Nos. 05 Civ. 9930 & 06 Civ. 2270, 2009 WL 773351, at *5 (S.D.N.Y. Mar. 18, 2009), this Court could order the minutes unsealed and authenticated if the plaintiff demonstrates a "compelling and particularized need"

for the minutes.  Brown v. City of New York, No. 06 Civ. 2059, 2007 WL 415080, at *1 (S.D.N.Y. Jan. 30, 2007).

Ultimately, however, this Court need not decide whether the minutes are admissible because the plaintiff has failed to present any evidence of perjury before the grand jury.  The plaintiff contends that the discrepancies in McCaughey's grand jury and trial testimony indicate that he committed perjury.  See Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Mem.") at 11-12.  However, McCaughey's grand jury testimony is consistent with his statements at trial.  Before the grand jury, McCaughey stated that he patted down the plaintiff and then emptied the plaintiff's pockets.  (Marshall Decl. Ex. B "McCaughey GJ Tr." at 97.)  At trial, McCaughey testified to the same events.  (Trial Tr. at 123-25.)  In both settings, McCaughey denied touching the plaintiff's groin or buttocks area.  (McCaughey GJ Tr. at 96; Trial Tr. at 125.)  The plaintiff confirmed that McCaughey never touched his groin or buttocks area.  (Stavridis Decl., Ex. O "Spenser Dep." at 131.)  Therefore, the plaintiff has not presented any evidence of perjury in McCaughey's testimony.

The plaintiff's arguments concerning Ellsworth's testimony are equally unsuccessful.  The plaintiff is correct that there are minor discrepancies between Ellsworth's grand jury and trial testimony.  Before the grand jury, Ellsworth testified that, as

12

he was walking the plaintiff into the precinct, Ellsworth heard a clank, saw a gun on the floor underneath the plaintiff, and gave the gun to Officer Michael. (Marshall Decl., Ex. A "Ellsworth GJ Tr." at 14.) At trial, Ellsworth testified that, as he was walking the plaintiff into the precinct, Ellsworth heard a clank, saw a gun on the floor directly below the plaintiff, gave the gun to the front desk, and then McCaughey took possession of the gun. (Trial Tr. 184-86.) However, this minor discrepancy fails to substantiate that Ellsworth committed perjury. See Montes v. King, 00 Civ. 4707, 2002 WL 1808209, at *3 (S.D.N.Y. Aug. 6, 2002) (explaining that minor inconsistencies in grand jury testimony do not indicate perjury); see also Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003) (finding that evidence demonstrating more than simply "mistaken memories" supported an allegation of bad faith or perjury). Moreover, the plaintiff's claim that the gun did not fall from his pants but that Ellsworth planted the gun on him is "mere conjecture" that is inadequate to rebut the presumption of probable cause. See Ramashwar, 2006 WL 234481, at *8. Therefore, the plaintiff's claims for malicious prosecution are **dismissed.**[3]

---

[3] It is unnecessary to reach the defendants' additional argument that the plaintiff was held and prosecuted on the robbery charges as well as the weapons charges, and the defendants had probable cause to precipitate the prosecute of the plaintiff on the robbery charges based on the victim's accusation against the plaintiff. This argument would not be a basis for a

B

McCaughey also moves to dismiss the plaintiff's claim for malicious prosecution on the grounds that he is entitled to the "fellow officer" defense or, in the alternative, qualified immunity, based upon the information he received from Ellsworth. Because the plaintiff has failed to rebut the presumption of probable cause, it is unnecessary to reach the issue of qualified immunity with respect to McCaughey's grand jury testimony.[4]  See Irish v. City of New York, No. 09 Civ. 5568, 2010 WL 5065896, at *5 (S.D.N.Y. Dec. 6, 2010) (citing Cunny v. City of New York, No. 99 Civ. 4634, 2001 WL 863431, at *6 (S.D.N.Y. July 31, 2001).

Insofar as the plaintiff is suing McCaughey because he signed a complaint against the plaintiff relating to the plaintiff's possession of a loaded firearm, McCaughey is correct that the "fellow officer" rule would protect his actions.  The "fellow officer" rule provides that an "arresting officer might not be aware of all the underlying facts that provided probable cause or reasonable suspicion, but may nonetheless act

---

complete dismissal of this case because there was at least some period of time, after the robbery charges were dropped, when the plaintiff was being prosecuted solely on the weapons charges.

[4] If there were evidence of perjury in the record, McCaughey would not be entitled to qualified immunity because officers of reasonable competence could not disagree that providing perjured testimony to cause an indictment was a constitutional violation.  See Bonide Prods., Inc. v. Cahill, 223 F.3d 141, 145 (2d Cir. 2000) (per curiam) (providing for qualified immunity only "if it was objectively reasonable for [officers] to believe that their actions did not violate that [constitutional] right") (citation omitted).

14

reasonably in relying on information received by other law enforcement officials." United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001).  Here, Ellsworth informed McCaughey that the plaintiff was in possession of a gun.  (See Stavridis Decl., Ex. K, at 4.)  Prior to conveying this information, Ellsworth heard a clank while bringing the plaintiff into the precinct and saw a gun on the floor beneath the plaintiff.  (Defs.' 56.1 Stmt. ¶¶ 9-10.)  As such, McCaughey reasonably relied on the information provided to him by Ellsworth when preparing the complaint against the plaintiff.  See Williams v. City of New York, No. 05 Civ. 10230, 2007 WL 2214390, at *11 (S.D.N.Y. July 26, 2007).

C

The defendants also move to dismiss the plaintiff's claims against the NYPD pursuant to Rule 12(c).  The defendants argue that the NYPD is not a suable entity because it is an agency of the City.  The plaintiff offers no response to this argument, and the defendants are correct that the NYPD cannot be sued. See Jenkins v. City of New York, 478 F.3d 76, 93 n. 19 (2d Cir. 2007); see also Adams v. City of New York, No. 08 Civ. 5263, 2010 WL 743956, at *3 (S.D.N.Y. Mar. 2, 2010).  Therefore, all claims against the NYPD are **dismissed**.

To the extent that the plaintiff's complaint may be construed as asserting a claim for municipal liability against

the City under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), this claim should be dismissed as well.  Municipalities are not subject to liability under theories of respondeat superior but rather on the basis that their policies or customs "inflict[ed] the injury upon the plaintiff."  Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  Id.; see also Adams, 2010 WL 743956, at *6.  Here, the plaintiff has not alleged an official policy or custom and does not attempt to establish a claim under Monell.  Therefore, the plaintiff's claims against the City are **dismissed.**

D

The defendants also move to dismiss the plaintiff's remaining federal claims brought under § 1983.  The plaintiff alleges an assortment of claims arising from the defendants' "unlawful and illegal conduct."  (Compl. ¶ 38.)  This amalgam of purported claims includes such things as the right to be informed of the charges against him, the right to due process, the right to be free from arbitrary policy conduct, and the right to have the defendants apply reasonable standards in hiring and retention.  However, the plaintiff has not

16

substantiated any of these claims, and did not attempt to substantiate them in response to the motion for summary judgment. These claims are therefore abandoned. See Bowen v. Cnty. of Westchester, 706 F. Supp. 2d. 475, 492 (S.D.N.Y. 2010) (collecting cases). Moreover, there is no evidence in the record to support any of these claims. These remaining federal claims are therefore **dismissed**.

E

The plaintiff also alleges state law claims for negligence and intentional infliction of emotional distress.[5] This Court declines to exercise supplemental jurisdiction over these claims because the Court has dismissed all of the federal claims. See 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); see also Int'l Media Films, Inc. v. Lucas Entm't, Inc., 703 F. Supp. 2d 456, 466 (S.D.N.Y. 2010).

---

[5] It is unclear if the supplemental complaint should be construed to include state law claims for false arrest and malicious prosecution, but neither of those claims survives the current motion for summary judgment. The plaintiff withdrew his claim for false arrest on December 21, 2009. (Stavridis Decl., Ex. C). Any state law claim for malicious prosecution is subject to the same analysis as his claim under § 1983 and must, therefore, be dismissed. See Davis v. Rodriguez, 364 F.3d 424, 434 n.7 (2d Cir. 2004) (collecting cases). Moreover, the plaintiff made it clear at argument that his claim for malicious prosecution was being asserted only under § 1983.

CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment is **granted**. The Clerk is directed to enter judgment dismissing the complaint and closing this case. The state law claims of negligence and intentional infliction of emotional distress are dismissed without prejudice. The Clerk is also directed to close all pending motions.

SO ORDERED.

Dated: New York, New York
May 9, 2011

John G. Koeltl
United States District Judge